MOORE, Judge.
 

 Bishop State Community College appeals from the decision rendered by hearing officer Thomas G. Humphries on March 28, 2008, overturning the dismissal of its employee, David L. Thomas, pursuant to Ala.Code 1975, § 36-26-104(a), a part of the Fair Dismissal Act (“the FDA”), Ala.Code 1975, § 36-26-101 et seq. We reverse and remand.
 

 Facts
 

 David Thomas has been employed by Bishop State Community College (“the college”) since 1993. Originally, Thomas worked full-time as a history instructor. In 1995, Thomas became both a part-time history instructor and a part-time director of the college’s Black History Museum and Research Library. On September 1, 2000, the college promoted Thomas to the position of director of the Southwest Campus, giving him supervisory responsibility over the college’s campus facilities. In July 2003, Thomas added the duties of director of the Division of Adult Education and Economic Development to his job of director of the Southwest Campus. Written job-performance evaluations showed that Thomas performed his various jobs at or near the highest levels according to his various supervisors.
 
 [1]
 
 Yvonne Kennedy, the president of the college from 1981 to July 31, 2007, and now President Emeritus, testified that Thomas was an outstanding employee who performed his job very well at every stage between 1993 and 2005,
 
 *981
 
 justifying his promotions and the expansion of his administrative responsibilities.
 

 In early 2005, Thomas was arrested for leaving the scene of an accident and driving while under the influence of alcohol. One year later, while those criminal charges remained pending, Thomas, who was also a commissioner of the Mobile County School Board (“the Board”), was indicted and impeached for allegedly using his official position to obtain public funds and services for his personal use.
 

 After a trial on the impeachment charges, on May 4, 2006, a Mobile County jury found that Thomas should be removed from his office as a commissioner for willful neglect of duty, corruption in office, incompetency, and an offense involving moral turpitude. The jury specifically found that Thomas had entered into a contract to purchase candy and trinkets to throw in a Mardi Gras parade without receiving prior approval from the Board or any of its employees; that Thomas had ordered Board employees to assist in the unloading and delivering of the candy and trinkets and to follow him on the parade route and resupply him with those items; that no other personnel of the Board, other than one of Thomas’s fellow commissioners, had been invited to ride in the parade; and that Thomas had not informed the Board of the price and other details of the contract for the purchase until March 2, 2006, days after the parade, when the Board received the invoice and paid for the candy and trinkets. The jury found that Thomas’s actions violated the criminal laws of Alabama and constituted acts of moral turpitude; however, the jury did not specify which criminal laws had been violated.
 
 [2]
 

 Eleven days later, Thomas pleaded guilty to leaving the scene of an accident, a Class C felony, based on the 2005 arrest.
 
 [3]
 
 On June 14, 2006, Thomas pleaded guilty to using his official position for personal gain, a Class A misdemeanor, based on his 2006 indictment.
 
 [4]
 
 The Mobile County dis
 
 *982
 
 trict attorney dropped all the other criminal charges that had been brought against Thomas, including the theft charges and the driving-under-the-influence charge.
 

 During 2005 and 2006, Thomas continued working at the college in his role as the director of the Division of Adult Education and Economic Development. Before he assumed that role in 2003, the state agency responsible for overseeing the program had issued a report card giving the program a grade of “F” because only 18% of the students enrolled in its program had passed the General Equivalency Diploma (“GED”) test, far below the 38% goal. By 2004, under Thomas’s leadership, the college had received a grade of “A” because 54% of its students had passed the GED test. The college maintained its “A” rating in 2005 and 2006 while Thomas remained the director of the adult-education department. In Thomas’s 2005 written job-performance evaluation, which covered the period from August 2004 to July 2005, Kennedy indicated that Thomas needed improvement in his relationships with other people, explaining:
 

 ‘Although the employee continued to treat others with respect and courtesy throughout the year, he failed to continue to inspire their respect and confidence in him as a result of an accident he had [for which he] was arrested and charged with leaving the scene of an accident.”
 

 However, Kennedy found that Thomas’s overall job performance was “satisfactory,” i.e., that it “[frequently exceeds the standard requirements of the position; performance is often better than acceptable.”
 
 [5]
 

 On July 27, 2006, Kennedy issued Thomas’s annual job-performance evaluation. In that evaluation, Kennedy again noted that Thomas needed improvement in his relationships with people. Kennedy wrote:
 

 ‘Although employee continues to treat others with respect and courtesy, he still has not regained the full respect and confidence he previously received from others.”
 

 Nevertheless, Kennedy rated Thomas’s overall job performance as “satisfactory.” Kennedy explained at the hearing that, although Thomas had encountered problems instilling confidence in other college employees after his legal problems, Thomas was performing his job satisfactorily.
 

 Despite her positive evaluations of Thomas, Kennedy agreed that Thomas’s off-duty actions had, in fact, damaged the reputation of the college. Kennedy contacted Roy Johnson, then chancellor of the Department of Postsecondary Education (“the Department”), inquiring whether she should terminate Thomas’s employment based on his “external problems.” Kennedy testified that Joan Davis, the legal counsel for the Department, had advised Johnson and Kennedy that the Department had no specific policy that would cover terminating an employee’s employment for off-duty conduct. Kennedy stated that Johnson had informed her on more
 
 *983
 
 than one occasion that, so long as Thomas was performing his job satisfactorily, she did not have to terminate his employment. Kennedy testified that, in June 2006, Davis had informed her that Johnson had changed his mind and that he wanted Thomas’s employment terminated. After Kennedy asked Davis to inform Johnson to directly convey his desire to Kennedy or to state in writing that he wanted Thomas’s employment terminated, Davis subsequently telephoned Kennedy and told her that Johnson wanted her to “sit tight.” Johnson did not give Kennedy any further guidance on the issue before the Alabama Board of Education terminated Johnson’s employment in July 2006. Kennedy testified that, after Johnson left his post as chancellor, she had discussed the matter with his successors, Thomas Corts and Renee Culverhouse, both of whom had concurred that Thomas could remain employed by the college.
 

 On January 22, 2007, Kennedy removed Thomas from his position as director of the Southwest Campus and as a member of the college’s executive committee. Kennedy testified that the title of “Director of Southwest Campus” gave people the impression that Thomas had greater administrative responsibilities than he actually held and that she had thought the move would be in the best interests of the college and Thomas. Thomas maintained his job as the director of the Division of Adult Education and Economic Development, and he was further assigned to work in the college’s Office of Alumni Affairs. On February 28, 2007, Kennedy authored another job-performance evaluation on Thomas. In that evaluation, Kennedy noted that Thomas had made some progress toward restoring the confidence of other college employees but that he still needed “to re-establish relationships with people that will again inspire their respect and confidence in him.” Kennedy again rated Thomas as a satisfactory employee.
 

 On May 24, 2007, the Alabama Board of Education appointed Bradley Byrne as chancellor of the Department. Byrne testified that, in an effort to restore the integrity of the Department, which was then undergoing two major criminal investigations, he had immediately instituted an unwritten policy that all convicted felons should not be employed in the two-year college system. Byrne testified that, prior to his tenure, the Alabama Board of Education did not have a formal policy regarding the employment of convicted felons in the two-year college system but that he had interpreted the terms of the FDA, which allows for the dismissal of two-year college employees for “good and just causes,”
 
 [6]
 
 to authorize the dismissal of any covered employee convicted of a felony, even one committed while off-duty. As a convicted felon, Thomas fell within the ambit of that policy, so Byrne believed that his employment should be terminated.
 

 Byrne testified that, before deciding that Thomas’s employment should be terminated, he had not discussed Thomas with Johnson
 
 [7]
 
 or Corts but that he had talked to Culverhouse, who, according to Byrne, considered the Thomas situation serious but had stated that she had not had time to do anything about it. Byrne also testified that he did not recall speaking with Corts or Culverhouse about any conversations they had had with Kennedy regarding Thomas. Byrne further admitted that he had not inquired of Kennedy or Thomas’s other superiors about Thomas’s job performance at the college, that he had not
 
 *984
 
 reviewed Thomas’s job-performance evaluations or reports from the state agency that had evaluated Thomas’s department, that he had not discovered the details of Thomas’s crimes or Thomas’s prosecution, that he had not weighed any mitigating factors, that he had not contemplated any penalty less than termination of his employment for Thomas, and that he had not considered rehabilitating Thomas.
 

 In June 2007, Byrne held a meeting with Kennedy at which Davis was also present. At that meeting, Byrne and Kennedy discussed the various problems facing the college. Near the end of that meeting, Byrne asked Kennedy why Thomas was still employed. Though Byrne and Kennedy gave varying descriptions of the subsequent conversation, they both agreed that Byrne had authorized Kennedy to terminate Thomas’s employment. Byrne testified that he expected Kennedy to initiate the termination process before she retired.
 

 Kennedy retired from the presidency of the college later that week without terminating Thomas’s employment. Byrne then appointed James Lowe as interim president of the college. Although his official start date was August 1, 2007, Lowe testified that he had actually reported to the college three weeks early. Byrne and Lowe testified that Byrne had instructed Lowe to carry out the termination of Thomas’s employment. Byrne also testified that he had asked Lowe to review the Thomas situation, to make sure that he concurred with Byrne’s analysis, and, if so, to initiate termination proceedings. Lowe testified that Byrne had said he wanted to terminate Thomas’s employment to promote the integrity of the college.
 

 On July 16, 2007, Thomas was placed on administrative leave. Lowe testified that, over the next weeks, to assure that Byrne had not overlooked anything and out of fairness to Thomas, he had reviewed Thomas’s personnel evaluations; had talked to Kennedy; had interviewed a few of Thomas’s recent subordinates, who had indicated that Thomas had been a poor manager during his legal troubles; had examined Thomas’s criminal and impeachment records; and had talked with people in the community, all of whom had given him negative opinions about Thomas. Lowe stated that he met Thomas but that he had not discussed with Thomas his past job performance. Lowe also testified that he had not interviewed Thomas’s past superiors or the employees of the state agencies who had evaluated Thomas in the past. Based on his investigation, Lowe agreed with Byrne that Thomas’s employment should be terminated. Lowe testified that he had not considered transferring or demoting Thomas and that, when he made his decision, he did not realize that the theft charges had been dropped or that Thomas’s impeachment actually was not a criminal proceeding. When apprised of that information at the administrative hearing, Lowe testified that those facts would not have changed his mind.
 

 On August 1, 2007, Lowe wrote a letter to Thomas, notifying him of the college’s intent to terminate his pay and his employment based on the following facts:
 

 “(1) You were convicted of the felony of leaving the scene of an accident after you ran over a child’s foot with your vehicle during Mardi Gras in 2005.
 

 “(2) You were impeached in 2006 from your position as a member of the Mobile County School Board for your improperly handling and use of public money.
 

 “(3) Overall ineffectiveness due to the lack of confidence and respect of others, failure to communicate with others and failure to demonstrate adequate leadership in managing
 
 *985
 
 the responsibilities assigned to you.”
 

 Although the college offered to hold a pre-termination hearing, Thomas declined. On September 10, 2007, Lowe sent Thomas a letter notifying him that his employment and pay had been terminated. Thomas immediately notified the college that he was exercising his right under the FDA to a
 
 de novo
 
 hearing.
 

 On December 19, 2007, the hearing officer conducted a hearing regarding Thomas’s termination. On March 28, 2008, the hearing officer rendered his decision. The hearing officer found that Thomas’s employment had been terminated without good or just cause; that his termination resulted from “the arbitrary application of a nonexistent policy, devoid of reasonable standards and a fair and proper investigation”; that Thomas, despite his legal problems, had properly performed his job duties; and that the college would not suffer further damage to its reputation by maintaining Thomas’s employment. Based on those conclusions, the hearing officer overturned the termination of Thomas’s employment and ordered the college to reinstate Thomas in an instructor position with backpay, including the reimbursement of any medical expenses that would have been covered by Thomas’s group health insurance. The college timely appealed that decision.
 
 [8]
 

 Analysis
 

 The FDA provides that a covered nonprobationary employee, like Thomas, shall not be “terminated”
 

 “except for failure to perform his or her duties in a satisfactory manner, incompetency, neglect of duty, insubordination, immorality, justifiable decrease in jobs in the system, or other good and just causes; provided, however, such termination of employment shall not be made for political or personal reasons on the part of any party recommending or voting to approve said termination.”
 

 § 36-26-102, Ala.Code 1975. If an employee properly contests the termination of his or her employment,
 
 see
 
 § 36-26-103(b), Ala.Code 1975 (setting out the procedure for contesting a termination under the FDA), the employee is entitled to a
 
 de novo
 
 hearing. § 36-26-104(a), Ala.Code 1975. Pursuant to the statutory charge, the hearing officer should first decide whether the employer has “stated and proved proper grounds for terminating an employee’s employment.”
 
 Bishop State Cmty. Coll. v. Williams,
 
 4 So.3d 1152, 1157 (Ala.Civ.App.2008). If the hearing officer concludes that the employer has met its initial burden, the hearing officer shall then decide whether the employer dismissed the employee to further an improper motive, i.e., for personal or political reasons.
 
 See Ex parte Wilson,
 
 984 So.2d 1161, 1171 (Ala.2007) (construing the Teacher Tenure Act, § 16-24-1 et seq., Ala.Code 1975). Finally, the hearing officer “shall determine which of the following actions should be taken relative to the employee: Termination of the employee, a suspension of the employee, with, or without pay, a reprimand, other disciplinary action, or no action against the employee.” § 36-26-104(a), Ala.Code 1975.
 

 
 *986
 
 In making those determinations, the hearing officer conducts a
 
 de novo
 
 hearing, meaning the issue is tried “anew, afresh, or over again.”
 
 Alabama Pub. Serv. Comm’n v. B & B Transp. & Limousine Serv., Inc.,
 
 397 So.2d 120, 122 (Ala. 1981) (citing
 
 Slaughter v. Martin,
 
 9 Ala. App. 285, 63 So. 689 (1913), and
 
 Black’s Law Dictionary
 
 483 (rev. 4th ed. 1968)). “A
 
 de novo
 
 hearing is not one at which the evidence taken at a prior hearing is continued or incorporated, but is one at which the entire evidence to be presented is heard anew or afresh.”
 
 Id.
 
 In conducting the hearing, the hearing officer considers “the evidence and/or information submitted to the hearing officer,” § 36-26-104(a), not only without any presumption in favor of the decision reached by the employer, but as if no prior determination had even been made.
 
 See Allen v. Bessemer State Tech. Coll.,
 
 703 So.2d 383, 386 (Ala.Civ. App.1997). Because the hearing is
 
 de novo,
 
 the hearing officer is not constrained by the evidence the employer considered, the employer’s analysis of that evidence, or the employer’s conclusions derived therefrom.
 
 See id.
 

 Once the hearing officer makes his or her decision and reduces that decision to a writing containing findings of facts and conclusions of law,
 
 see
 
 § 36-26-104(a), Ala. Code 1975, the party aggrieved by that decision may petition this court to review the decision, which petition may be granted only if this court “determines there are special and important reasons for granting the appeal.” § 36-26-104(b), Ala.Code 1975. “ ‘[T]he decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious ....’”
 
 Williams,
 
 4 So.3d at 1157 (quoting § 36-26-104(b), Ala.Code 1975).
 

 In employing the arbitrary-and-capricious standard of review, the legislature intended this court to be “extremely deferential” to the hearing officer’s decision in an FDA case.
 
 See Ex parte Dunn,
 
 962 So.2d 814, 816 (Ala.2007) (construing arbitrary-and-capricious standard of review mandated by Teacher Tenure Act). As our supreme court has stated:
 

 “[T]he reviewing court may not substitute its judgment for that of the hearing officer.... [W]here ‘reasonable people could differ as to the wisdom of a hearing officer’s decision[,] ... the decision is not arbitrary.’ ...
 

 “ ‘If the decision-maker has “ ‘examined the relevant data and articulated a satisfactory explanation for its action, including a “rational connection between the facts found and the choice made,” ’ ” its decision is not arbitrary.
 
 See Alabama Dep’t of Human Res. v. Dye,
 
 921 So.2d [421, 426 (Ala.Civ.App.2005) ] (quoting
 
 Prometheus Radio Project v. FCC,
 
 373 F.3d [372, 389 (3d Cir.2004) ] (quoting in turn
 
 Burlington Truck Lines, Inc. v. United States,
 
 371 U.S. 156, 168 (1962))).’ ”
 

 Ex parte Dunn,
 
 962 So.2d at 816-17 (quoting with approval, but reversing on other grounds,
 
 Board of Sch. Comm’rs of Mobile County v. Dunn,
 
 962 So.2d 805, 809, 810 (Ala.Civ.App.2006)). Pursuant to the arbitrary-and-eapricious standard of review, this court may “disagree with the wisdom of the decision, [but] we may not substitute our judgment for that of the hearing officer.”
 
 Ex parte Dunn,
 
 962 So.2d at 823-24.
 

 In this case, the hearing officer found that the college had satisfactorily proven that Thomas had been convicted of a felony for leaving the scene of an accident and that he had been impeached and removed from his position as a commissioner of the Board. However, the hearing officer concluded that the college did not prove that Thomas had been “overall ineffective” in
 
 *987
 
 performing his job duties. Reciting the evaluations of Thomas’s work before his employment had been terminated, the hearing officer concluded that Thomas, “irrespective of his off-duty actions, was able to perform his duties in a proper manner.” Based on the substantial evidence presented to the hearing officer supporting that determination, and our deferential standard of review, we conclude that the hearing officer did not act arbitrarily and capriciously in reaching the foregoing factual determinations.
 

 However, that does not end the inquiry. As the hearing officer acknowledged, the college argued below that each of the three factual bases cited in its notice-of-termination letter to Thomas independently support the termination of Thomas’s employment. Thus, even if convinced that Thomas was able to effectively perform his job, the hearing officer still needed to determine whether Thomas should be terminated on account of his felony conviction and/or his impeachment.
 

 At first blush, it would seem that, if an employee is effectively performing his or her job, an employer would have no good or just cause for terminating that employee’s employment. However, Alabama law has long held that, in some cases, other circumstances may justify the termination of a capable school employee’s employment. As Thomas has acknowledged throughout these proceedings, this court has recognized that the 'term “other good and just cause”
 

 “ ‘in a statute of this kind [Tenure Act] is by no means limited to some form of inefficiency or misconduct on the part of the teacher dismissed, but includes any ground put forward by a school committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee’s task of building up and maintaining an efficient school system.’ ”
 

 Ellenburg v. Hartselle City Bd. of Educ.,
 
 349 So.2d 605, 609-10 (Ala.Civ.App.1977) (quoting 68 Am.Jur.2d
 
 Schools
 
 § 183). The term “other good and just cause” refers to “ ‘any cause which bears a reasonable relation to the teacher’s fitness
 
 or
 
 capacity to discharge the duties of his position.’ ”
 
 Alford v. Ingram,
 
 931 F.Supp. 768, 772 (M.D.Ala.1996) (noting that, in
 
 Faircloth v. Folmar,
 
 252 Ala. 223, 40 So.2d 697 (1949), the Alabama Supreme Court had “adopted th[is] interpretation” and citing
 
 Cooper v. Perry County Bd. of Educ.,
 
 264 Ala. 251, 254, 86 So.2d 832, 835 (1956)) (emphasis added). By carrying that term forward into the FDA, the legislature is presumed to have adopted the settled meaning of the term “other good and just cause.”
 
 Madison County Bd. of Educ. v. Wilson,
 
 984 So.2d 1153, 1159 (Ala.Civ.App. 2006) (construing Teacher Tenure Act), affirmed,
 
 Ex parte Wilson,
 
 984 So.2d 1161. Accordingly, under the FDA, an employee who is performing his or her job duties effectively may, nevertheless, properly be terminated from his or employment if that employee has become unfit for continued employment or his or her retention would interfere with the building up or maintaining of an efficient school system.
 

 In this case, the evidence shows that, due to his criminal convictions and his impeachment, Thomas’s retention had damaged the reputation of the college. Lowe testified that when he had interviewed members of the community, no one had spoke positively of Thomas. According to Byrne, the student enrollment of the college had dwindled considerably during Thomas’s legal troubles. Byrne testified that his first priority was to restore the integrity of the college so that the students would come back. As the hearing officer determined, “it was into this milieu that a
 
 *988
 
 policy was proposed to allow educational institutions such as the College to bar convicted felons from employment.” However, the hearing officer specifically declined to decide whether that policy was “legally permissible, morally defensible, or necessary to the orderly operation of the Colleges,” i.e., whether that policy related to the building up and maintaining of an efficient school system so that its violation would be good and just cause for the termination of Thomas’s employment.
 

 Instead, the hearing officer found that the felony-conviction policy was “nonexistent” at the time Thomas’s employment was terminated. That finding is incorrect. Based on Policy 619.01, adopted by the Alabama Board of Education and in place at the time Byrne became chancellor, all employees of the two-year college system covered by the FDA could be dismissed for “good and just causes.” Before Byrne took office, that phrase had not been interpreted to allow termination on the basis of a felony conviction for off-duty actions; however, as chancellor of the two-year college system, Byrne is specifically empowered to “[ijnterpret the rules and regulations of the board concerning the junior colleges and trade schools.” § 16-60-111.5(2), Ala.Code 1975. Acting pursuant to his statutory authority, Byrne decided, as he testified, that the phrase “other good and just causes” included any felony conviction. Thus, the decision to terminate Thomas’s employment due to his felony conviction was based on the existing policy of the Alabama Board of Education to dismiss employees for “other good and just causes.”
 

 In addition to incorrectly determining that the felony-conviction policy did not exist and failing to decide whether the felony-conviction policy justified the termination of Thomas’s employment, the hearing officer also failed to make any determination regarding whether Thomas’s impeachment and the factual findings of the jury underlying that impeachment, including the finding that Thomas had committed an offense involving moral turpitude in violation of Alabama’s criminal laws, adversely affected Thomas’s fitness to remain employed by the college and warranted the termination of his employment, an issue litigated at the hearing. The FDA specifically requires the hearing officer to make findings of fact on the issues litigated by the parties. § 36-26-104(a), Ala.Code 1975. Without those findings, we cannot determine whether the hearing officer adequately considered the facts surrounding Thomas’s impeachment in reaching its decision to reinstate Thomas.
 

 In
 
 Williams, supra,
 
 this court reversed a hearing officer’s determination for, among other reasons, failing to address the preliminary question of whether the employer had proved proper grounds for terminating an employee’s employment. Consistent with
 
 Williams,
 
 we reverse the decision of the hearing officer in this case and remand the cause for the hearing officer to make a determination whether, in spite of his documented job performance, Thomas’s felony conviction and impeachment constituted “other good and just causes” for the termination of his employment under Alabama law. Because we are reversing on those grounds, we pretermit any discussion of the other issues asserted by the college.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . The college could not locate some written job-performance evaluations. Thomas testified without contradiction that those evaluations were similar to the ones place into evidence.
 

 [2]
 

 . The jury marked a line next to the following paragraph:
 

 "THOMAS' ACTIONS VIOLATED THE CRIMINAL LAWS OF THE STATE OF ALABAMA — -For the acts described above, the March 2006 session of the Mobile County Grand Jury has preferred a six count indictment charging that David Thomas committed the offenses of theft in the first degree by deception, theft in the first degree, using his official position for personal gain in violation of the ethics laws, solicitation of board employees to commit ethics violations, violating of the bid laws of the State of Alabama, which also constitutes a separate ethics violation when committed by a public official or public employee. A copy of this indictment is attached hereto and incorporated by reference as if fully set forth herein.”
 

 [3]
 

 . Section 32-10-2, Ala.Code 1975, provides:
 

 "The driver of any motor vehicle involved in an accident resulting in injury to or the death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address and the registration number of the vehicle he is driving, shall upon request exhibit his driver’s license to the person struck or the driver or occupant of or person attending any motor or other vehicle collided with or damaged and shall render to any person injured in such accident reasonable assistance, including the transportation of, or the making of arrangements for the transportation of such person to a physician or hospital for medical or surgical treatment, if it is apparent that such treatment is necessary or if such transportation is requested by the injured person.”
 

 Section 32-10-6, Ala.Code 1975, provides that a violation of § 32-10-2 is a Class C felony "when such violation involved ... personal injury.”
 

 [4]
 

 .Section 36-25-5(a), Ala.Code 1975, provides:
 

 "No public official or public employee shall use or cause to be used his or her official position or office to obtain personal gain for himself or herself, or family member of the
 
 *982
 
 public employee or family member of the public official, or any business with which the person is associated unless the use and gain are otherwise specifically authorized by law. Personal gain is achieved when the public official, public employee, or a family member thereof receives, obtains, exerts control over, or otherwise converts to personal use the object constituting such personal gain.”
 

 Section 36-25-27(a)(2) makes an unintentional violation of § 36-25-5(a) a Class A misdemeanor.
 

 [5]
 

 . In both 2003 and 2004, Kennedy had found Thomas's job performance to be "more than satisfactory,” i.e., that it "[m]eets the standard requirements of the position; seldom if ever, is the performance less than acceptable.”
 

 [6]
 

 .
 
 See
 
 § 36-26-102, Ala.Code 1975.
 

 [7]
 

 . Byrne testified that he had not talked to Johnson because Johnson was the subject of a major criminal investigation.
 

 [8]
 

 . The hearing officer rendered his decision on March 28, 2008. The college filed its notice of appeal with the clerk of this court on April 16, 2008, 19 days later. Section 36-26-104(b) provides, in pertinent part: "An appeal by either parly shall be perfected by filing a written notice of appeal with the Clerk of the Court of Civil Appeals within 21 days after the receipt of the final written decision of the hearing officer.” Hence, we reject Thomas’s contention that the college did not timely appeal.