THOMPSON, Presiding Judge.
 

 Bishop State Community College (“Bishop State”) appeals from the order of the Federal Mediation
 
 &
 
 Conciliation Service hearing officer reinstating Henry R. Douglas as an instructor of food service at
 
 *618
 
 Bishop State and awarding him back pay.
 
 [1]
 
 The order also found that Douglas was to be reprimanded in the form in which Bishop State had previously issued a reprimand to him. The previous reprimand had been based on the same facts as those serving as the basis of this matter. References to subsequent attempts to discipline Douglas for the same conduct were ordered expunged from his personnel file.
 

 Bishop State terminated Douglas’s employment as an instructor after an external audit revealed that he had enrolled in ten courses for which he was also the instructor of record and that he had enrolled as a student in six courses that were taught at the same time he was scheduled to be teaching. Bishop State alleged that Douglas concealed his conduct from school officials, leading it to conclude that Douglas was attempting to obtain an associate’s degree “unscrupulously” and that his conduct involved moral turpitude.
 

 The evidence adduced at the hearing tended to show the following. Bishop State had been offering a commercial-food-service program (“the program”) for a number of years. In 2000, one of the two instructors in the program retired. The program was popular, and the remaining instructor, Herman Packer, sought approval from Bishop State president Dr. Yvonne Kennedy to hire another instructor. Douglas, a prominent executive chef in Mobile, was selected to fill the position in December 2001. However, Douglas’s formal education did not include a degree in food service. Bishop State officials were concerned that Douglas’s lack of sufficient academic hours “in field” would affect the program’s accreditation with the American Culinary Federation. Dr. Harry Holloway, Bishop State’s technical dean, sent a memorandum to the human resources director at Bishop State expressing his concerns about Douglas’s academic credentials and recommending that Douglas “be given a letter of employment explaining that his placement is contingent upon him completing the associate degree” in commercial food service.
 

 Packer testified that he was eager to hire Douglas. He said that when Kennedy was made aware of Douglas’s lack of a degree “in field,” Kennedy told him to hire Douglas without delay and to see that steps were taken to have Douglas earn an associate’s degree in an appropriate field within two years. Douglas was hired as an instructor in the program on February 25, 2002, and reported for work that same day. Douglas testified that, on the day he was hired, he met with Dr. Norman New-berry, director of Bishop State’s Carver campus, where Douglas would be working, and that Holloway joined the meeting via a speaker telephone. Douglas said that at that meeting, he was told for the first time that his degree was in the “wrong field” for academic purposes and that he had to earn an associate’s degree in commercial food service within two to three years so that the program could satisfy accreditation requirements.
 

 Newberry testified that it was safe to assume that Douglas understood that he was required to earn an associate’s degree within two to three years. He also acknowledged that a full-time student in the program would earn an associate’s degree in two years and that Douglas would be expected to work full time while he was earning his degree. Both Newberry and Holloway recognized that the only feasible
 
 *619
 
 institution from which Douglas could earn the required degree was Bishop State and that the nearest alternative program was in Gulf Shores, which would require a three-hour round-trip drive from Mobile in addition to time spent in class.
 

 Packer said he could see no way for Douglas to earn the associate’s degree within the time specified unless he pursued an independent course of study. To that end, he and Douglas both testified that, during the times their respective schedules did not require one of them to be in class or in his office, Packer would instruct Douglas in the courses required in the program. Douglas would register for the courses he was taking independently as those courses appeared on Bishop State’s course list, but, according to Douglas and Packer, Douglas was not actually taking those courses at those times. As a result, they said, it appeared that Douglas was enrolled in courses he was teaching or that were being taught by Packer at the same time Douglas was scheduled to be teaching his own courses. There is no dispute that Packer and Douglas did not follow Bishop State’s independent-study policy in having Douglas complete his course work in such a manner.
 

 In January 2007, Bishop State initially disciplined Douglas with a letter of reprimand. Also in January 2007, the Southern Association of Colleges and Schools (“SACS”) placed Bishop State on probation for, among other things, lack of academic integrity. The situation with Douglas was one of the matters cited by SACS in its findings that led to the probation. In April 2007, Kennedy notified Douglas and Packer that she intended to suspend them each for seven days because of their conduct. A conference was scheduled pursuant to the Fair Dismissal Act (“the FDA”), § 36-26-100 et seq., Ala. Code 1975, but it was postponed and was never rescheduled.
 

 Kennedy left her position as president of Bishop State in the summer of 2007, and Dr. James Lowe became interim president of the school on August 1, 2007. Lowe reviewed Douglas’s and Packer’s conduct, determined that heightened discipline was required, and made the decision to terminate their employment. A pretermination conference was held for Douglas on August 29, 2007. Lowe notified Douglas by letter on November 8, 2007, that his employment was being terminated. Douglas timely contested the decision pursuant to the FDA.
 

 The academic hours Douglas received toward his associate’s degree in the program that came about as a result of the conduct for which he was disciplined have been expunged from his record. As the hearing officer noted, this case did not involve the propriety of that action on the part of Bishop State.
 

 In his order, the hearing officer found that when Douglas was recruited to teach in the program, he had no teaching or academic background and had a “lack of sophistication in the academic world.” The hearing officer also found that, in attempting to earn his associate’s degree through the informal “independent-study” plan worked out between him and Packer, the questionable behavior of Douglas — and of Packer — was based on “response to pressure on Packer and Douglas that Douglas’ teaching credentials be up-graded within a relatively short period.” After setting forth extensive findings of fact based on the evidence presented at the FDA hearing, the order reflected that the hearing officer
 

 “finds that it should have been clear to Douglas that representations being made to [Bishop State] regarding his teaching and student activities [for
 
 *620
 
 which he was terminated] were not consistent with the facts as he knew them. At the same time, the Hearing Officer finds that Douglas’ participation in the matter for which he was charged was the result of his following the instructions of Packer. The Hearing Officer finds that a combination of reliance on Packer’s position of authority and his own lack of sophistication in the academic world allowed Douglas to be a party to and beneficiary of what has the appearance of a dishonest scheme.
 

 “There is nothing in the record to show an intent on the part of Douglas to defraud the College with respect to class credits, pay for teaching, or tuition credit.”
 

 Based upon his findings, the hearing officer determined that the proper discipline for Douglas in this matter was a reprimand and not the termination of his employment with Bishop State.
 

 The hearing officer noted that the material facts in the case were essentially uncontested by either Bishop State or Douglas and that his primary role was determining the proper disciplinary action to be taken against Douglas. Pursuant to the FDA, the hearing officer “shall determine which of the following actions should be taken relative to the employee: Termination of the employee, a suspension of the employee, with or without pay, a reprimand, other disciplinary action,
 
 or no
 
 action against the employee.” § 36-26-104(a), Ala.Code 1975.
 

 Bishop State contends that the hearing officer’s decision to reinstate Douglas to his position as instructor was arbitrary and capricious in light of the evidence presented. Specifically, Bishop State contends that the hearing officer’s conclusion that the evidence presented failed to show that Douglas had an intent to defraud Bishop State was clearly erroneous. In making this argument in its appellate brief, Bishop State failed to cite any law, in contravention of Rule 28(a)(10), Ala. R.App. P. However, out of an abundance of caution, we will address the merits of Bishop State’s argument.
 

 “ ‘[T]he decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious ....’”
 
 Bishop State Cmty. Coll. v. Williams,
 
 4 So.3d 1152, 1157 (Ala.Civ.App.2008) (quoting § 36-26-104(b), Ala.Code 1975). In
 
 Bishop State Community College v. Thomas,
 
 13 So.3d 978, 986 (Ala.Civ.App.2008), this court discussed the use of the arbitrary- and-capricious standard of review in an FDA case, explaining that the legislature intended this court to be “extremely deferential” to the hearing officer’s decision.
 
 See Ex parte Dunn,
 
 962 So.2d 814, 816 (Ala.2007) (construing arbitrary-and-eapri-cious standard of review mandated by Teacher Tenure Act). In discussing this court’s review of the decision of a hearing officer in an FDA case, the
 
 Thomas
 
 court quoted our supreme court as follows:
 

 “ ‘[T]he reviewing court may not substitute its judgment for that of the hearing officer.... [W]here “reasonable people could differ as to the wisdom of a hearing officer’s decision[,] ... the decision is not arbitrary.”
 

 [[Image here]]
 

 “ ‘ “If the decision-maker has ‘ “examined the relevant data and articulated a satisfactory explanation for its action, including a ‘rational connection between the facts found and the choice made,’ ” ’ its decision is not arbitrary.
 
 See Alabama Dep’t of Human Res. v. Dye,
 
 921 So.2d [421, 426 (Ala.Civ.App.2005) ] (quoting
 
 Prometheus Radio Project v. FCC,
 
 373 F.3d [372, 389 (3d Cir.2004) ] (quoting in turn
 
 Burlington Truck Lines, Inc. v.
 

 
 *621
 

 United States,
 
 371 U.S. 156, 168 (1962))).” ’
 

 “Ex parte Dunn,
 
 962 So.2d at 816-17 (quoting with approval, but reversing on other grounds,
 
 Board of Sch.
 
 Comm’rs
 
 of Mobile County v. Dunn,
 
 962 So.2d 805, 809, 810 (Ala.Civ.App.2006)). Pursuant to the arbitrary-and-capricious standard of review, this court may ‘disagree with the wisdom of the decision, [but] we may not substitute our judgment for that of the hearing officer.’
 
 Ex parte Dunn,
 
 962 So.2d at 823-24.”
 

 Thomas,
 
 13 So.3d at 986.
 

 In this case, the hearing officer’s decision to reprimand Douglas rather than to terminate his employment was based on consideration of the evidence presented. The hearing officer articulated a satisfactory explanation for his decision. We note that the decision to reprimand Douglas was the same discipline that Bishop State initially imposed for Douglas’s conduct. Although this court may have reached a different conclusion than that reached by the hearing officer, we are bound by the decisions of our supreme court, and, following the rationale set forth in the supreme court’s decision in
 
 Dunn,
 
 we conclude that, based upon the record before us and after studying the hearing officer’s order explaining the rationale for his decision, we cannot say that the hearing officer’s decision to reprimand Douglas and to reinstate his employment with Bishop State was arbitrary and capricious.
 
 See Ex parte Dunn,
 
 962 So.2d at 816-17.
 

 Bishop State contends that the hearing officer mistakenly determined that the January 2007 reprimand of Douglas issued by Holloway, Bishop State’s technical dean, was an official reprimand under the FDA. Bishop State argues that the reprimand failed to meet the formal requirements of a disciplinary action under the FDA. It appears to assert that, to the extent that the hearing officer relied upon that “mistaken” finding in reaching his decision, the decision was arbitrary and capricious.
 

 Douglas had sought to have the termination proceedings against him dismissed because, he asserted, Bishop State was estopped from pursuing his dismissal because it had already disciplined him for the same conduct by means of a reprimand. The hearing officer explicitly denied Douglas’s motion to dismiss and decided the case on its merits. The hearing officer conceded that his decision on the merits led “to substantially the same result as would the granting] of the motion [to dismiss].” Nonetheless, as discussed above, the hearing officer explained his decision that a reprimand was the proper discipline to be imposed in this case, the explanation was rational in light of the evidence presented, and, therefore, we cannot say that the decision to reprimand Douglas rather than to terminate his employment was arbitrary and capricious.
 

 In reinstating Douglas, the hearing officer awarded Douglas “back pay from the day on which his compensation was terminated.” Bishop State filed a post-hearing motion seeking clarification as to whether “back pay” included the value of lost health-insurance coverage and whether the award of back pay should be set off by the amount of money Douglas earned while working at another job after his employment with Bishop State had been terminated. Douglas filed a response in which he claimed that he was entitled to the value of his health-insurance coverage and that his back pay could not be set off by the amount he had earned in another job after his employment with Bishop State had been terminated. The hearing officer denied the motion for clarification.
 

 
 *622
 
 “If there is uncertainty in a judgment the court must construe it so as to express the intent of the trial judge, which intent can be derived from the provisions of the judgment.”
 
 Erbe v. Eady,
 
 406 So.2d 936, 938 (Ala.Civ.App.1981) (citing
 
 Price v. Price,
 
 360 So.2d 340 (Ala.Civ.App.1978)). In this case, however, the issue of what constituted back pay was not brought up by the parties until after the hearing officer had issued his decision, and, thus, none of the provisions in the hearing officer’s order shed light on what the hearing officer contemplated in ordering that Douglas receive “back pay” from the date his employment was terminated. We turn, therefore, to the law controlling the issues raised by Bishop State in its motion for clarification.
 

 Bishop State contends that the hearing officer should have set off Douglas’s award of back pay by the amount he earned while working after his employment had been terminated. This court specifically rejected that argument in
 
 State Department of Mental Health & Mental Retardation v. State Personnel Department,
 
 863 So.2d 1118 (Ala.Civ.App.2003). In reaching its holding, this court noted that no state statute or caselaw authorized a setoff of the award of back pay made to a public employee.
 
 Id.
 
 at 1120. Bishop State has provided this court with no reason to revisit our holding in that case.
 

 As to the issue whether Douglas is entitled to recover as part of his back pay the amount Bishop State would have spent on his insurance premiums from the date it terminated his compensation, the FDA does not define the terms “pay” or “back pay.” However, this court has held that “[bjackpay for a reinstated public employee includes the value of fringe benefits that the employee did not receive while she was not at work.”
 
 Whitlow v. City of Birmingham,
 
 689 So.2d 107, 109 (Ala.Civ.App.1996);
 
 see also Lauderdale County v. Daniels,
 
 431 So.2d 1266 (Ala.1983) (deputy sheriff given back pay, uniform allowance, and annual and sick leave). In
 
 Whitlow,
 
 a radio dispatcher who had been dismissed from her position with the Birmingham Police Department was reinstated with back pay, longevity pay, and her actual out-of-pocket medical expenses that would have been covered by insurance had she remained employed. She claimed that her back pay also should have included the amount of the City of Birmingham’s contribution to her health-insurance coverage. This court disagreed, concluding that, “even if Whitlow had been at work she would not have received the dollar amount of the City’s contributions to her health insurance coverage. Instead, she would have received the
 
 benefit
 
 of those contributions — continued health insurance coverage.”
 
 Whitlow,
 
 689 So.2d at 109.
 

 Likewise, in this case, Douglas would not have received as part of his pay the dollar amount that Bishop State contributed toward his health insurance. Therefore, we conclude that he would not be entitled to recover that dollar amount as part of his award of back pay.
 

 As noted above, this court may not have reached the same conclusion as the hearing officer; however, for the reasons set forth above, the decision of the hearing officer reinstating Douglas to his position as instructor at Bishop State and awarding him back pay from the date his compensation was terminated is affirmed.
 

 AFFIRMED.
 

 PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Dismissal of instructors from state community colleges is governed by the Fair Dismissal Act ("the FDA”), § 36-26-100 et seq., Ala. Code 1975.
 
 See Perine v. Kennedy,
 
 868 So.2d 1123 (Ala.Civ.App.2003). Section 36-26-104(b) of the FDA provides that all appeals of a final decision of the hearing officer lie with the Alabama Court of Civil Appeals.