THOMPSON, Presiding Judge.
The Chilton County Board of Education (“the Board”) appeals a decision of a hearing officer reversing the Board’s decision to suspend its employee, Dr. Benita Caha-lane, for 90 days without pay. The events that form the basis of this appeal occurred after July 1, 2011, the effective date of the Students First Act (“the SFA”), § 16-24C-1 et seq., Ala.Code 1975, which, among other things, repealed and replaced the former Fair Dismissal Act (“the FDA”), see former § 36-26-100 et seq., Ala.Code 1975. See § 16-24C-14, Ala. Code 1975 (the effective date of the SFA is July 1, 2011).
It is undisputed that Cahalane is a “classified employee” of the Board as that term is defined under the SFA and that, because of her length of service with the Board, she has attained the status of “non-probationary employee.” See § 16-24C-3(2), Ala.Code 1975 (defining “classified employee”); and § 16-24C-4(2) (setting forth the conditions for attaining nonpro-bationary-employee status). We note that the SFA speaks in terms of the rights of the parties when a person’s employment is “terminated” pursuant to that act. Under the SFA, however, a suspension without pay of the employment of a nonprobation-ary employee for more than 20 days is subject to review under the SFA in the same manner as is a termination of employment. § 16-24C-6(I), Ala.Code 1975.
The record indicates that on July 26, 2011, Dave Hayden, the superintendent of the Chilton County schools, acting pursuant to § 16-24C-6(c) of the SFA, notified Cahalane of his intention to recommend that the Board suspend her from her employment for 90 days without pay; that *364 notice cited a violation of Board policy as the reason for the suspension.
Cahalane timely contested that suspension, see § 16-24C-6(c), and the Board conducted a hearing at which it received evidence. On September 20, 2011, the Board issued a decision upholding the superintendent’s recommendation that Caha-lane be suspended without pay for 90 days. Cahalane appealed the Board’s decision, seeking a review by a hearing officer pursuant to § 16-24C-6(e) of the SFA.
The hearing officer conducted a hearing at which it heard the arguments of the parties but received no evidence. On February 6, 2012, the hearing officer issued a decision reversing the decision of the Board. The Board timely appealed pursuant to § 16-24C-12, Ala.Code 1975.
The evidence presented to the Board reveals the following facts, which are largely undisputed. Cahalane has worked in the education field for approximately 30 years, and she has been employed by the Board for approximately 20 years. At the time of the incident that gives rise to this appeal, Cahalane was employed as the Board’s coordinator for special education, and her office was located in the Board’s main office building. It is undisputed that the Board has a policy forbidding the possession of illegal drugs on the Board’s property.
On the morning of July 21, 2011, Caha-lane discovered a small bag containing a green, leafy substance in her vehicle. Ca-halane testified that her daughter, who had recently borrowed the vehicle, had a history of drug problems. Cahalane removed the substance from her vehicle, which was parked in the Board’s employee parking lot, and carried it into her office. Once in her office, Cahalane placed the bag containing the substance in a prescription-medication bottle bearing her name and the name of a medication that had been prescribed to her.
It is undisputed that, because of her daughter’s history of drug use, Cahalane intended to take the substance to a police station for testing. While in her office on the morning of July 21, 2011, Cahalane showed the substance to a coworker, Mandy Varden, and asked Varden if she thought the substance was marijuana. The record indicates that neither Cahalane nor Vai'den was certain whether the substance was marijuana. Cahalane informed Varden that she planned to take the substance to the police station during her lunch hour to determine whether the substance was, in fact, marijuana. Varden testified that she warned Cahalane that if she were caught with the substance in her purse or in her vehicle, she could go to jail.
Later on the morning of July 21, 2011, Cahalane received a telephone call from her doctor asking her to come to the doctor’s office to discuss the results of some blood work; Cahalane explained that she has a serious liver condition. Cahalane testified that, after receiving that telephone call, she arranged to leave her office at 11:30 to take “a half day” off work to consult her doctor. Cahalane left her office to attend that doctor’s appointment, but she left the pill bottle containing the substance in a drawer in her office desk.
Varden testified that later on the afternoon of July 21, 2011, she became concerned that, because of the Board’s anti-drug policy, her employment might be terminated because she had knowledge that the substance was in the Board’s offices. Therefore, Varden stated, she informed another coworker, Paula Thornton, that Cahalane had shown the substance to her. Varden and Thornton verified that the substance remained in Cahalane’s office, and Thornton informed Willie Mae White, the assistant superintendent of the Chilton *365 County schools, of the presence of the substance in Cahalane’s office. White, in turn, notified Hayden, who called police chief Brian Stilwell. Hayden, Stilwell, and a narcotics officer with a drug-sniffing dog met at the Board’s main offices on the evening of July 21, 2011, and the dog alerted on Cahalane’s desk. Stilwell testified that the substance was not visible on Cahalane’s desk and that, because they were not certain they had probable cause to conduct a search, the officers did not search the drawers of Cahalane’s desk.
The next morning, July 22, 2011, Hayden met with Varden and Thornton, and he then met with Cahalane. Hayden testified that he told Cahalane that he had been informed that she had something in her office that should not be there, and that Cahalane responded, “You mean the marijuana?”. Hayden characterized Caha-lane as “forthcoming,” and he stated that she left their meeting to go to her office and returned with the substance. A police officer called to the Board’s offices conducted a field test on the substance and confirmed that it was marijuana.
At the hearing before the Board, Caha-lane explained that she had planned to take the substance to the police to have it tested to determine whether her daughter was again using drugs. Cahalane stated, however, that she had not wanted to ask to leave work because she had taken a number of days off work because of her health condition and she did not want to miss any more work. Cahalane also testified, however, that she had not known with certainty that the substance was marijuana and that, “if [she had] even thought that it was” marijuana, she would have immediately taken the substance to have it tested at the police station, even if that resulted in her having to take time off work.
On questioning by the superintendent, Cahalane admitted that she could have asked to leave work to have the substance tested. Cahalane admitted that the superintendent had never refused her requests to leave work and that she believed he would have allowed her to do so had she asked. She also later stated that she “could not have told [the superintendent] that it was marijuana because then [he] would have called the police.”
Cahalane stated that she “made a bad decision” in taking the substance into her office at the Board’s main office. She also stated that she believed that the substance was more secure in her office at the Board’s main office than it would have been if she had left it in her vehicle. Ca-halane pointed out that it would also have been a violation of Board policy to leave the substance in her vehicle, which was parked on the Board’s property on the morning of July 21, 2011.
Stilwell testified that Cahalane’s daughter admitted that she left the substance in Cahalane’s vehicle and that he found that admission to be credible. Stilwell testified that, based on his investigation, he believed that Cahalane had removed the substance from her vehicle so she could confront her daughter about her drug use. According to Stilwell, Cahalane had informed him that her daughter had tested positive for the use of marijuana on a “home” drug test administered during the weekend before the July 21, 2011, incident. Cahalane had told Stilwell that, in response to the results of the home drug test, her daughter had insisted that she had used a form of synthetic marijuana that was legal in Alabama at the time. Stilwell testified, however, that synthetic marijuana does not contain substances that make it detectable on drug tests.
In response to questioning by Cahalane, Stilwell testified that the police would have tested the substance if Cahalane had brought the substance to the police station *366 in order to assist her in seeking to stop her daughter’s drug use. Stilwell agreed that, technically, Cahalane’s bringing the substance to the police would mean that she had an illegal substance in her possession. However, Stilwell stated that the police did not charge people in such situations because “we have to use common sense sometimes.”
We note that Cahalane was not charged with a crime as a result of having had the marijuana in her possession. Further, it does not appear from the record on appeal that Cahalane’s coworkers or the members of the Board disbelieved Cahalane that the marijuana belonged to her daughter.
In his decision, the hearing officer acknowledged that deference was to be afforded to the decision of the Board, but he reversed the Board’s decision, concluding that that decision was arbitrary and capricious. In reaching that decision, the hearing officer found that Cahalane did not intend to have an illegal substance on the Board’s property and that she “accidentally found herself with custody of a suspicious substance on school grounds.”[1] The hearing officer also determined that the 90-day suspension of Cahalane’s employment was “manifestly unjust,” given the facts.
The SFA, which governs this action, was enacted to replace the FDA and the former Teacher Tenure Act (“the TTA”), § 16-24-1 et seq., Ala.Code 1975. The SFA sets forth procedures for an employee to obtain a hearing to review an action by a school board that were formerly available under the FDA and the TTA.[2] The former FDA provided for a “de novo hearing,” see former § 36-26-104, Ala.Code 1975, after which the hearing officer was to determine whether the decision of the Board was “for political or personal reasons.” Former § 36-26-102, Ala.Code 1975. Under the TTA, a teacher could appeal a transfer or a termination of his or her employment to determine if that action was “arbitrarily unjust.” See former § 16-24-7 and former § 16-24-10(a), Ala. Code 1975. Under the FDA, and under the TTA, the hearing officer was the finder of fact, and the hearing officer’s decision regarding the disputed facts was entitled to deference. See Ex parte Dunn, 962 So.2d 814, 823-24 (Ala.2007) (reiterating that former § 16-24-10(a) of the TTA authorized de novo review by the hearing officer of a school board’s decision and afforded deferential review to the decision of the hearing officer based on the evidence it received); Montgomery Cnty. Bd. of Educ. v. Webb, 53 So.3d 96, 114 n. 3 (Ala.Civ.App.2008), rev’d on other grounds, Ex parte Webb, 53 So.3d 121 (Ala.2009) (under the FDA, the hearing officer was the finder of fact, and his or her decision was entitled to deference); see also Ex parte City of Birmingham, 7 So.3d 363, 368-69 (Ala.Civ.App.2008) (a panel reviewing the record from the ore tenus hearing before a hearing officer did not afford proper deference to the decision of the hearing officer that was based on that evidence). The appellate courts reviewed the decisions of the hearing officers in those cases, i.e., in which the hearing officer was the finder of fact, under an “arbitrary and capricious” standard. Ex parte Webb, 53 So.3d at 127; Ex parte Dunn, 962 So.2d at 816-17.
*367 In this case, the Board conducted a hearing pursuant to § 16-24C-6(c). The SFA also provides for a hearing in the event an employee appeals the decision of a school board; the relevant provision states, in pertinent part:
“Except as hereinafter provided, the appeal shall be submitted to the hearing officer. The hearing officer shall hold a hearing. Deference is given to the decision of the employer....”
§ 16-24C-6(e), Ala.Code 1975.
At the appeal before the hearing officer, the parties and the hearing officer discussed whether the SFA authorized a hearing before the hearing officer at which evidence might be presented, as had the FDA and TTA. However, neither party argued that it or she was entitled to a de novo hearing. Rather, both parties indicated that they were satisfied with the evidence presented at the hearing before the Board, although Cahalane’s attorney advised the hearing officer that Cahalane was available to testify should the hearing officer need clarification on any evidence or issue. Accordingly, the matter was submitted to the hearing officer on the arguments of the parties, and neither party objected.
The Board argues on appeal that the hearing officer erred in reversing its decision under the SFA; it contends that the hearing officer failed to afford proper deference to its decision. As the Board points out, the SFA is different from the FDA, which would have applied to Caha-lane, in that it fails to set forth a specific standard pursuant to which the hearing officer is to review the decision of the Board. The SFA specifies only that “a hearing” be conducted and that “deference” is to be afforded to the decision of the Board. § 16-24C-6(e). With regard to the interpretation of the SFA, the legislature stated:
“The repealer provisions of Act 2011-270[, which enacted the SFA and repealed the FDA,] notwithstanding, and except as expressly provided otherwise in this chapter, the terms and phrases used in subsection (a) to identify the reasons on which termination may be based and in subsection (f) to describe the standards by which decisions of the employer are to be reviewed by hearing officers shall be deemed to carry the meaning traditionally accorded the terms and phrases by the appellate courts of this state under prior law.”
§ 16-24C-6(n), Ala.Code 1975.[3] However, subsection (f) of § 16-24C-6 does not contain a reference to the “standards by which decisions of the employer are to be reviewed by hearing officers.” Thus, other than the reference to affording “deference” to the decision of the Board, the legislature, in enacting the SFA, set forth no explicit standard by which the actions of the Board are to be reviewed.
The hearing officer in this case applied the “arbitrary and capricious” standard to his review of the Board’s decision. The Board agrees that that standard applies, although it disagrees with the hearing officer’s reversal of its decision under that standard. In her brief on appeal, Caha-lane also agrees that the hearing officer correctly applied the “arbitrary and capricious” standard to his review of the Board’s decision. Accordingly, in resolving this appeal, this court will determine whether the hearing officer properly applied the “arbitrary and capricious” standard in his review of the Board’s decision.
In this case, the hearing officer reviewed the matter from the position this court *368 occupied under the FDA. With regard to such review, this court has held:
“In employing the arbitrary-and-capricious standard of review, the legislature intended this court to be ‘extremely deferential’ to the hearing officer’s decision in an FDA case. See Ex parte Dunn, 962 So.2d 814, 816 (Ala.2007) (construing arbitrary-and-capricious standard of review mandated by Teacher Tenure Act). As our supreme court has stated:
“ ‘[T]he reviewing court may not substitute its judgment for that of the hearing officer.... [w]here “reasonable people could differ as to the wisdom of a hearing officer’s decision[,] ... the decision is not arbitrary.”
“ ‘ “If the decision-maker has ‘ “examined the relevant data and articulated a satisfactory explanation for its action, including a ‘rational connection between the facts found and the choice made,’ ” ’ its decision is not arbitrary. See Alabama Dep’t of Human Res. v. Dye, 921 So.2d [421, 426 (Ala.Civ.App.2005) ] (quoting Prometheus Radio Project v. FCC, 373 F.3d [372, 389 (3d Cir.2004) ] (quoting in turn Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962))).” ’
“Ex parte Dunn, 962 So.2d at 816-17 (quoting with approval, but reversing on other grounds, Board of Sch. Comm’rs of Mobile County v. Dunn, 962 So.2d 805, 809, 810 (Ala.Civ.App.2006)). Pursuant to the arbitrary-and-capricious standard of review, this court may ‘disagree with the wisdom of the decision, [but] we may not substitute our judgment for that of the hearing officer.’ Ex parte Dunn, 962 So.2d at 823-24.”
Bishop State Cmty. Coll. v. Thomas, 13 So.3d 978, 986 (Ala.Civ.App.2008). As noted above, our supreme court has stated that, “[w]here ‘reasonable people could differ as to the wisdom of a hearing officer’s deeision[,] ... the decision is not arbitrary.’ ” Ex parte Dunn, 962 So.2d at 816 (quoting with approval Board, of Sch. Comm’rs of Mobile Cnty. v. Dunn, 962 So.2d at 809, rev’d on other grounds); Bishop State Cmty. Coll. v. Thomas, 13 So.3d at 986.
In both Bishop State Community College v. Thomas, supra, and Ex parte Dunn, supra, the hearing officer received evidence and was the trier of fact, and the courts reviewed the hearing officer’s decision based on that receipt of evidence under the arbitrary-and-capricious standard. In this case, the Board received evidence and was the trier of fact. The hearing officer was asked to review the Board’s decision based on that evidence. Thus, as indicated above, the hearing officer in this case was required to afford deference to the decision of the Board, even if he would have reached a different result than did the Board. § 16-24C-6(e); Bishop State Cmty. Coll. v. Thomas, supra; Ex parte Dunn, supra. In other words, the hearing officer in this case did not receive evidence, and, in reviewing the record of the proceeding before the Board, he was in no better position than is this court to review the decision reached by the Board after the presentation of evidence.
The Board contends, among other things, that the hearing officer erred in determining that intent was an element of the Board’s anti-drug policy. As the Board points out, deference must be afforded to the Board’s interpretation of its own policy, if that interpretation is reasonable. Ex parte Board of Sch. Commr’s of Mobile Cnty., 824 So.2d 759, 761 (Ala.2001). The Board did not submit as evi *369 dence a copy of its anti-drug policy. However, the fact that the Board’s policy is a “zero-tolerance” policy, i.e., one that prohibits drugs or controlled substances on the Board’s premises for any reason, was not in dispute. The testimony of the witnesses, including Cahalane, all of whom were employees of the Board, indicates that those witnesses understood that illegal drugs were not allowed to be brought onto the Board’s property. The findings in the hearing officer’s decision indicate that the hearing officer acknowledged that the Board’s policy effectively had no provision regarding intent and that its interpretation of its policy was not unreasonable: the hearing officer stated in his February 6, 2012, decision that “[f]or the superintendent and the Board to strictly apply a zero-tolerance [anti-drug] policy and rule is not, standing alone, erroneous.” We agree with that finding, and we conclude that the Board’s interpretation of its own anti-drug policy as a “zero-tolerance” policy was not unreasonable. Ex parte Board of Sch. Commr’s of Mobile Cnty., supra.
However, regardless of the hearing officer’s determination that the Board’s interpretation of its own policy forbidding illegal drugs on its property was not erroneous, the hearing officer then stated, citing a phrase used by Stilwell in his testimony, that the Board must use “common sense” in applying its anti-drug policy. The hearing officer concluded that because of the purportedly extenuating circumstances of this case, the Board erred in applying a zero-tolerance policy to discipline Cahalane. By its terms, however, a “common-sense” approach allowing exceptions to a disciplinary rule under certain facts may not be applied to the Board’s interpretation, which we have determined is reasonable, of its zero-tolerance policy concerning controlled substances and illegal drugs. We agree with the Board that, because its interpretation of its own anti-drug policy as a zero-tolerance policy is reasonable, the hearing officer erred in concluding that fact-dependent exceptions to that policy must be considered and that the Board erred in failing to do so.
Furthermore, even assuming that the hearing officer correctly determined that the Board’s zero-tolerance anti-drug policy required a showing of intent and was subject to a “common-sense” exception, we conclude that the hearing officer erred in determining that the Board’s decision in this case was arbitrary and capricious, given the evidence. The hearing officer, in reaching his decision, found that Cahalane was “without intention to possess a controlled substance” and that she “accidentally found herself with custody of a suspicious substance on school grounds.” The Board argues that, in making those determinations, the hearing officer failed to give appropriate deference to its decision based on the evidence it received. As is explained below, we agree.
The evidence before the Board does tend to indicate that Cahalane did not intend to have marijuana in her vehicle and that the marijuana was placed in Ca-halane’s vehicle by her daughter. However, as the Board determined, the incident of July 21, 2011, was caused by Cahalane’s actions and choices. It is not clear from the record whether Cahalane discovered the substance in her vehicle before or after she arrived on the Board’s property, but Varden’s testimony indicates that it might have occurred before Cahalane arrived on the Board’s property. Varden testified: “[Cahalane] told me she was going to [take the substance to have it tested] that morning before she came in but that she was running late and did not do it.” Caha-lane’s testimony does not clearly indicate when she discovered the substance in her vehicle. Regardless, rather than leaving *370 the Board’s property upon the discovery of the substance in her vehicle, Cahalane elected to take the substance, which she suspected was marijuana, into the Board’s offices.
On appeal Cahalane insists that on the morning of July 21, 2011, she did not know with certainty that the substance was, in fact, marijuana. Cahalane testified before the Board that if she had thought the substance was marijuana, she would have immediately taken it for testing. However, that testimony is not consistent with much of the evidence. The evidence indicates that Cahalane believed that the substance likely was an illegal substance. For example, Cahalane testified that, because of her daughter’s history of drug use, she planned to take the substance to the police station for testing, and she had asked Var-den if Varden thought the substance was marijuana. Stilwell testified that Caha-lane had informed him that her daughter had tested positive for marijuana on a “home test” the weekend before July 21, 2011. The superintendent testified that on the morning of July 22, 2011, when he met with Cahalane, she had answered his inquiry about whether she had any improper materials in her office by asking if he was referring to “the marijuana” in her office. She also told the superintendent during her testimony that if she had told him about the “marijuana” on the morning of July 21, 2011, he would have called the police. Given that evidence, we cannot conclude that the hearing officer was correct in determining that the decision of the Board was arbitrary and capricious.
We note that, before the hearing officer and in her brief submitted to this court, Cahalane argues that she had a “perfectly logical explanation for her failure to follow up” with removing the substance from the Board’s offices to have it tested. Cahalane argues that she made a “rational and reasonable” choice to leave the Board’s offices on the morning of July 21, 2011, to attend an appointment at her doctor’s request. She contends, therefore, that the Board’s decision to suspend her employment was arbitrary and capricious.
It does not appear that any party has questioned the reasonableness or necessity of Cahalane’s attending the doctor’s appointment on the morning of July 21, 2011. The issue before the Board, however, was the presence of the marijuana in Caha-lane’s office. The evidence before the Board indicates that, although Cahalane acknowledged the superintendent would have allowed her to leave work if she had asked, Cahalane elected not to do so. Rather, because she did not want to miss any more time from work, Cahalane elected to wait to have the substance tested. She later left work for the doctor’s appointment and left the substance in her desk at the Board’s offices. The record contains no explanation as to why Caha-lane did not remove the substance when she went to the doctor’s office. Regardless, it is undisputed the Cahalane brought the marijuana onto the Board’s property, and she left it there overnight.
We recognize the difficulty of the situation in which Cahalane found herself on July 21, 2011, and that, as she stated, she made a mistake. We also note that it does not appear that the Board failed to recognize the extenuating circumstances of this situation or that it was unsympathetic to her situation. Cahalane testified that she was relieved that her employment had not been terminated over the incident, an option that was available to the Board. See § 16-24C-6(a) (a “nonprobationary classified employee” may be “terminated [or suspended] at any time ... for incompetency, insubordination, neglect of duty, immorality, failure to perform duties in a *371 satisfactory manner, or other good and just cause... .”).[4] The record indicates that Cahalane’s coworkers and the superintendent did not believe that Cahalane had used or was using illegal drugs. However, the Board determined that Caha-lane’s bringing the substance that, given the facts, she knew might be an illegal drug onto the Board’s property and leaving it there was a violation of the Board’s anti-drug policy. Given the evidence presented to the Board, we conclude that the Board’s decision to suspend Cahalane for 90 days without pay was not arbitrary and capricious, and, therefore, we conclude that the hearing officer erred in substituting his judgment for that of the Board under that standard. Accordingly, we reverse the February 6, 2012, decision of the hearing officer.
REVERSED AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
BRYAN and MOORE, JJ., concur in the result, without writings.

. The Board’s main offices, at which Caha-lane’s office was located, are not on the grounds of a school.

. The SFA also sets forth procedures for notifying the employee of the school board's intended action and of its decision after a hearing. See § 16-24C-6. Cahalane does not allege that she did not receive proper notice pursuant to the requirements of the SFA.

. The subsections referenced in § 6 of Act No. 2011-270, Ala. Acts 2011, the legislation that enacted the SFA, are identical to those codified at § 16-24C-6, Ala.Code 1975.

. In her brief on appeal, Cahalane argues, as support for the hearing officer’s decision, that the 90-day suspension of her employment was too harsh a sanction, given the facts. However, Cahalane did not file a conditional cross-appeal to raise that issue in the event this court reversed the decision of the hearing officer. Bess v. Waffle House, Inc., 824 So.2d 783, 787 (Ala.Civ.App.2001) (an appellee may file a conditional cross-appeal in order to preserve an argument for appeal in the event the appellate court reverses the judgment based on an argument of the appellant); see also First Props., L.L.C. v. Bennett, 959 So.2d 653, 657 (Ala.Civ.App.2006) ("Because we have concluded that the judgment is due to be reversed as a result of the appeal, the condition specified in the owner’s conditional cross-appeal has occurred, and that cross-appeal is ripe for review.”). Accordingly, there is no proper argument for this court to review as to that issue.