PITTMAN, Judge.
This appeal arises from teacher-disciplinary proceedings under the Students First Act (“the SFA”), Ala. Code 1975, § 16-24C-1 et seq., involving Kevin Stewart (“the teacher”), a teacher in the City of *987 Boaz school system. The superintendent of the Boaz school system, in a letter dated April 8, 2015, notified the teacher that termination of the teacher’s employment would be recommended by the superintendent because of the teacher’s work at a pawn shop during the course of a paid medical leave from.his employment as a teacher with the Boaz school system. After an ore tenus proceeding, the Boaz City School Board (“the Board”) voted to terminate the teacher’s employment. The teacher timely sought appellate review of that decision,, and a hearing officer was appointed to hear the teacher’s appeal on the administrative record. That hearing officer issued an order determining that the Board’s action was arbitrary and capricious and that the Board’s decision was due to be reversed. The Board appealed to this court from the hearing officer’s order.
Under the SFA, hearing officers are to apply an “arbitrary-and-capriciouS’ standard of review ... of employers’ decisions under the SFA.” Ex parte Lambert, 199 So. 3d 761, 768 (Ala. 2015). That standard “is meant to be extremely deferential to the ... decision” of a board of education employing a teacher, such as the Board in. this case, and “ ‘require[s] ... deference to’” the pertinent board’s decision from hearing officers “ ‘even if [a hearing officer] would have reached a different result than did the [b]oard.’ ” Huntsville City Bd. of Educ. v. Jacobs, 194 So.3d 929, 939 (Ala. Civ. App. 2014) (quoting Chilton Cty. Bd. of Educ. v. Cahalane, 117 So.3d 363, 368 (Ala. Civ. App. 2012)).
We further note that, in undertaking appellate review of a hearing officer’s order entered in a case governed by the SFA, we review that order with no presumption that the order, as opposed to the decision of the disciplining board of education, is correct. See Cahalane, 117 So.3d at 368 (noting that, in disciplinary proceedings under the SFA, school boards receive evidence and are triers of fact and that hearing officers are “in no better position than is this court -to review” disciplinary decisions of school boards under the SFA). Cf. Alabama Dep’t of Youth Servs. v. State Pers. Bd., 7 So.3d 380, 385 (Ala. Civ. App. 2008) (noting that, in the analogous context of proceedings involving judicial review of an administrative-agency decision under the Alabama Adininistrative Procedure Act, Ala. Code 1975, § 40-22-1 et seq., this court will review a circuit court’s judgment without a presumption of correctness because the circuit court is in no better position to review an agency’s decision than is this court). In effect, this court’s review function under the SFA is similar to that' obtaining in administrative-law' settings generally—that is, review of the underlying decision “as though the [initial] appeal had been taken directly to this court.” State Oil & Gas Bd. v. Seaman Paper Co., 285 Ala. 725, 742, 235 So.2d 860, 876 (1970); accord Alabama Pub. Serv. Comm’n v. Nunis, 252 Ala. 30, 34, 39 So.2d 409, 412 (1949).
The record before the Board reveals the following facts. In pursuance of its responsibilities as to governance of the school system in the City of Boaz, the Board has adopted a policy' manual governing the conduct of, among other things, the Board’s employees. Among the provisions of the policy manual is § 5.9.3, which governs paid sick leave of regular, full-time employees; two of its subdivisions provide as follows: "
“5.9.3.a.1.3 Use of Sick Leave—Eligible employees may only use sick leave for absences caused by the following:
“1. Personal illness.
“2, Incapacitating personal injury..
[[Image here]]
“5,9.3.a.l.4 Certification—Employees must certify that sick leave was used for *988 one of the reasons provided in state law and specify the reason. If the employee’s principal or department head has probable cause to believe that an employee has abused or misused sick leave, a physician’s statement verifying the existence and nature of the illness or medical condition may be required by the Board. Abuse of sick leave may subject the employee to disciplinary action. “[Reference: Ala. Code § 16-1-18.1 (1975) ].”
(Emphasis added.) The Board’s policy manual also contains a prohibition of conflicts of interest, § 5.6, that provides that “[e]mployees may not use their offices or positions for personal gain and must adhere to applicable provisions of’ state ethics laws and may engage in “outside employment” only under particular terms and conditions, including:
“a. Employees will not engage in outside business activities or render any service for another employer during such time as duties and responsibilities have been assigned by the Board;
“b. Employees will not accept outside employment that would interfere with or impair the ability of the employee to perform duties as a Board employee effectively.”
The teacher has worked as an agricultural-science instructor at Boaz High School since 2001 and has, on occasion, worked as a tennis and swimming coach there. On or before January 12, 2015, the teacher and two other persons formed a corporation called “Sand Mountain Pawn and Outdoors, Inc.,” in order to operate an existing pawn-shop business that was conveyed to the incorporators by another person; according to testimony at the hearing before the Board, the teacher held a 35% ownership interest in the pawn-shop business. Soon thereafter, the teacher began disengaging from his work for the Board, directly notifying a superior on January 21, 2015, that he would no longer be able to coach tennis “[d]ue to the advice of [his] physician” and submitting a form “absence authorization” dated January 26, 2015, obtained from a chiropractor stating that the teacher was under the chiropractor’s cai-e and recommending that the teacher be “excused” from January 27, 2015, through February 24, 2015. However, the particular illness or injury made the basis of the teacher’s absence from his duties was not disclosed in either communication.
On February 4, 2015, during the period for which the teacher had sought to “excuse” his absence from his educational duties, another Board employee who had received information that the teacher was working at the pawn-shop business’s location went to that location and observed the teacher assisting customers of the business; when asked why he was working for the pawn-shop business while on sick leave from his employment with the Board, the employee admitted that the question was “kind of tricky” but apparently did not provide a substantive answer. On February 10, in response to that encounter, the teacher hand delivered a letter to the school-system superintendent again formally requesting a medical leave of absence and a form signed by a physician at a family-medicine clinic stating that the teacher was “[f]ully restricted” from working “until reassessment on February 24, 2015, and release[] by” the chiropractor who had executed the January 26, 2015, form. Again, however, neither the letter nor the form specified an illness or injury suffered by the teacher.
On February 16, 2015, the Boaz school superintendent sent a letter to the teacher (“the February 2016 letter”) stating that the work excuse from the family-medicine physician “failed to certify the information required under” § 5.9.3 of the Board’s pol *989 icy manual; directing the teacher to “immediately obtain certification regarding the existence, nature and extent of [his] medical condition,” to include “whether reasonable accommodations might be provided by the Board so that [he could] continue working for the Board”; and seeking, if no accommodations could be provided, “an explanation as to how [the teacher could] be unable to teach but still perform work” for the pawn-shop businéss. The February 2016 letter was hand delivered to the teacher-at the pawn-shop business’s location on February 18, 2015. Six days later, on February 24, 2015, the teacher sent an e-mail message to the superintendent stating that he was “requesting to extend [his] medical leave”[1] and that he would “remit [his] physician’s certification” on February 27, 2015. Also on February 24, 2015, the teacher’s chiropractor prepared a letter to the superintendent averring that the employee was “being treated for a serious chronic degenerative health condition” that “can result in transient periods of partial to full incapacitation,” that the chiropractor had conducted a “re-examination” of the teacher on that date and had observed “remaining positive orthopedic tests, decreased range of motion, and weakness of the extensor muscles of the spine,” and that the chiropractor could “recommend no accommodations to [the teacher’s] school work environment that [would] ensure[ ] the safety and well being of’ the teacher or his students. The letter sought to extend the teacher’s release from work until April 7, 2015, and stated that the teacher’s condition would be reevaluated as to his ability to return to his work duties for the Board. The chiropractor’s letter was provided to school-system personnel on March 4, 2015, in connection with the teacher’s rejection of an offer by the Board to accommodate the teacher by allowing him to do light-duty work.
In light of the chiropractor’s letter, the superintendent transmitted to the Board a recommendation on March 13, 2015, that leave for the teacher be approved for up to 12 weeks in duration, with paid sick leave and personal leave being expended first and the remaining leave being unpaid under applicable federal law. After the Board had accepted the superintendent’s recommendation, the superintendent sent a second letter to the teacher (“the March 2015 letter”) notifying him that, although his request for leave had been approved, he would be required, as of April 2, 2015, to pay for any further employee benefits and that the teacher would not receive regular pay for any further leave; the superintendent also represented that, under § 5.6 of the Board’s policy manual, the teacher was not to engage in any outside business activities for other employers between the hours of 7:30 a.m. and 3:00 p.m. Monday through Friday and warned that it would be the responsibility of the teacher to keep the superintendent informed as to the teacher’s status. The March 2015 letter, like the February 2015 letter, was personally delivered to the teacher at the pawnshop business’s location, where the teacher was observed to have been discussing arrangements of displays at the location.[2]
On April 8, 2015, after the teacher had been observed by private’ investigators to have been exerting himself at the pawnshop business’s location to pull and push heavy items such as shelving racks, lawn mowers, and pallets, he reported to work *990 for the Board without having obtained medical clearance. The superintendent thereafter sent a third letter to the teacher (“the April 2015 letter”) informing him that the superintendent would be recommending to the Board that the teacher’s employment be terminated. The April 2015 letter, among other things, stated that the teacher had not been present for work during school hours, averred that the teacher had been observed both before and after the granting of his medical-leave requests working at the pawn-shop business’s location, and concluded that the teacher had “not been forthcoming about [his] ownership interest in the [pawn-shop business, [his] work there, and/or [his] medical condition/ability to work.” The April 2015 letter also informed the teacher of his right to request a hearing before the Board regarding the proposed termination of his employment, which hearing was requested and granted.
At the hearing on the employee’s termination, the employee testified that the condition for which he had sought chiropractic treatment was a detachment of-one of his ribs from his spinal column; he initially identified the detachment as having been a discrete event that occurred on January 27, 2015, the day after the chiropractor’s “absence authorization” form was completed, but later testified that the condition was one from which he had suffered for approximately 10 years before the hearing and that nothing had. “trigger[ed]” his work absence in late January 2015. Further, the evidence adduced at the hearing revealed the teacher to have been a near-constant fixture at the pawn-shop business’s location during his time off from his teaching-job between January 2015 and April 2015, and he admitted that he had not been “completely forthcoming ... about how much [he had been] doing” at that location with Board personnel. After the close of the hearing, the Board voted unanimously to terminate • the teacher’s employment and issued a written decision observing that the evidence had established both the substance of the superintendent’s grounds stated in the April 2015 letter and that the teacher had failed “to adhere to [B]oard policy including but not limited to [§ ] 5.6” (emphasis added).'
Pursuant to Ala. Code 1975, § 16-24C-6(a), a portion of the SFA, “[t]enured teachers ... may be terminated at any time ... for incompetency, insubordination, neglect of duty, immorality, failure to perform duties in a satisfactory manner, or other good and just cause.” In this case, the Board concluded that the. superintendent, in light of dhe teacher’s ongoing involvement with the pawn-shop business during his absence from his work for the Board, had correctly identified the teacher’s conduct with respect to seeking, obtaining, and using sick leave with respect to his long-standing chronic rib condition as being, in effect, a misrepresentation or suppression of his ability to work for the Board. Stated in another manner, the work absences on the part of the teacher between January 2015 and April 2015 could properly have been determined by the Board actually to have been “caused” by his desire to perform duties in aid of the pawn-shop business that he co-owned so as to be outside the permissible scope of sick leave under § 5.9.3.a.l.3 of the Board’s policy manual, especially given the teacher’s conduct in reporting for work with no medical or chiropractic release to do so just after the paid component of the leave approved by > the Board had expired in early April 2015. Compare Waters v. City & Cty. of Montgomery Pers. Bd., 507 So.2d 951, 952 (Ala. Civ. App. 1986) (employee who had gone hunting while on sick leave properly held to have abused sick leave so; as- to- warrant termination of public employment).
*991 As amicus curiae the Alabama Association of School Boards correctly notes, Standard 2 of the Alabama Educator Code of Ethics, which stipulates that educators “should exemplify honesty and integrity in the course of professional practice,” Ala. Admin. Code (State Bd. of Educ.), Rule 290-4-l-.01(6)(c), also specifically proscribes “[falsifying, misrepresenting, omitting, or erroneously reporting reasons for absences or leaves.” Rule 290-4-1-.01(6)(e)2(iv). The Board’s determination that the teacher’s conduct in this case'warranted discipline was consistent with the duty of school systems under state administrative regulations of ensuring that “all educators ... who have contact with children ... act in accordance with” that ethical code. Rule 290-4-l-.01(6). Thus, the Board’s action, far from being arbitrary or capricious so as to run afoul of the standard espoused by our supreme court in Lambert, supra, falls squarely within the authority of a school board to terminate the employment of a tenured teacher for conduct within the scope of § 16-24C-6(a).
We conclude that the decision of the Board to terminate the employment of the teacher was proper. We do so notwithstanding the contrary conclusion of the hearing officer, who in our view improperly limited his inquiry in the order reversing the Board’s decision solely to whether the conduct demonstrated in the eyidentia-ry record before the Board amounted to a violation of the conflict-of-interest provisions contained in § 5.6 of the Board’s policy manual. Cfi Cahalane, 117 So.3d at 371 (holding that the same hearing officer as in this case “erred in substituting his judgment for that of’ the pertinent school board in that case). The order under review is, therefore, reversed, and the cause is remanded to the hearing officer with instructions to affirm the Board’s decision.
REVERSED AND REMANDED WITH INSTRUCTIONS..
Thompson, P. J., and Thomas, Moore, and Donaldson, JJ., concur.

. The teacher sent a handwritten request to the superintendent on March 4, 2015, clarifying that the anticipated ending date for the medical leave he was seeking was April 7, 2015.

. A second copy of the March 2015 letter was sent to the teacher via certified mail.